■ In the Matter of REBECCA X., a Child Alleged to be Neglected. ST. LAWRENCE COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; CARL X., Appellant. (And Two Other Related proceedings.) [795 NYS2d 113]—

Peters, J. Appeals from six orders of the Family Court of St. Lawrence County (Potter, J.), entered January 31, 2003, February 10, 2003, April 28, 2003 and October 22, 2003, which granted petitioner's applications, in three proceedings pursuant to Family Ct Act article 10, to adjudicate Rebecca X., Carissa Y. and Brittany Y. to be abused and/or neglected children.

Since January 2002, respondent resided with his girlfriend (hereinafter the mother), their daughter, Rebecca X. (born in 2001), and the mother's two daughters, Carissa Y. (born in 1995) and Brittany Y. (born in 1993). In May 2002, Brittany told her paternal grandmother and her father that respondent had sexually abused her; she repeated these allegations to the State Police as well as to Marlene El Hajal-Mouaikel, a pediatrician, working in the local emergency room. When speaking with El Hajal-Mouaikel, Brittany provided explicit details concerning

the abuse and stated that respondent had threatened to hurt her when she screamed in pain because he did not want her to wake up her younger sister who was also entrusted to his care. El Hajal-Mouaikel conducted a pelvic examination and concluded that Brittany had an abnormally thin or absent hymen which was consistent with sexual abuse. Days later, Brittany was examined by her pediatrician, David Schuessler, who concluded that she had a "widely patent" vaginal opening which was consistent with her statements of abuse.

When Sarah Lawrence, a caseworker, first interviewed Brittany, she disclosed that respondent had abused her. Lawrence was also present when Brittany's maternal grandfather questioned Brittany concerning the abuse; Brittany again named respondent. However, Brittany's mother later told Lawrence that Brittany now identified her father, and not respondent, as the perpetrator. Rosalyn Syp, a licensed clinical social worker hired by petitioner to do a sexual abuse assessment, confirmed that upon her first interview with Brittany, she named respondent as the perpetrator. Later, when Brittany was in foster care, she named her father. Brittany revealed to Syp that she wanted to go home to her mother and that respondent had promised to buy her a bike. Hence, based upon further conversations with Brittany and the family's dynamics, Syp opined that the first report identifying respondent was more reliable. Foster care worker Brenda Moulton confirmed Brittany's identification of respondent and added that Brittany's mother was intimidating her into identifying her father as the abuser. Brittany further told Moulton that respondent telephoned her, after the issuance of an order of protection, to threaten her into silence.

Petitioner filed a child abuse/severe abuse petition regarding Brittany and neglect petitions concerning Carissa and Rebecca. After a fact-finding hearing, Family Court found clear and convincing evidence to support the conclusion that Brittany had been sexually abused by respondent, and that Carissa and Rebecca had been neglected. Respondent's contact with Rebecca was limited to supervised visitation and screened written communication.[1]

Respondent's first contention is that Brittany's out-of-court statements of sexual abuse were not sufficiently corroborated. Recognizing that any "evidence tending to support the reliability of the previous statements" is sufficient to corroborate

---

1. Respondent was convicted of rape in the first degree and sodomy in the first degree for the same acts of abuse that underlie the current matter. He is currently incarcerated.

the child's out-of-court statement (Family Ct Act § 1046 [a] [vi]) and that the amount of such evidence falls within the discretionary determination of Family Court (*see Matter of Frank Y.*, 11 AD3d 740, 742 [2004]; *Matter of Joshua QQ.*, 290 AD2d 842, 843 [2002]), we find no error. Family Court's findings were based upon the corroborative testimony provided by the two pediatricians that examined her and by Moulton and Syp. Brittany's statements were consistent and explicit, demonstrating age-inappropriate knowledge of sexuality and anatomy. As the weight and credibility determinations regarding this testimony fall squarely on Family Court, there exists no basis to disturb its findings (*see Matter of Joshua QQ., supra* at 843; *see also Matter of Nicole V.*, 71 NY2d 112, 122 [1987]; *Matter of Colberdee C.*, 2 AD3d 1316, 1317 [2003]; *Matter of Dareth O.*, 304 AD2d 667, 668 [2003]; *Matter of Zachary Y.*, 287 AD2d 811, 814 [2001]; *Matter of Melissa L.*, 276 AD2d 856, 857 [2000], *lv denied* 96 NY2d 702 [2001]).

Nor do we find merit to respondent's contention that he was not a person legally responsible for Brittany's care at the relevant time (*see* Family Ct Act § 1012 [g]; § 1046 [a] [ii]). His own testimony confirmed that he was living with all three children from January through June 2002, was occasionally left alone with them and disciplined them when necessary. Accordingly, he was properly found to be " 'the functional equivalent of a parent in a familial or household setting' " (*Matter of Brent HH.*, 309 AD2d 1016, 1017 [2003], *lv denied* 1 NY3d 506 [2004], quoting *Matter of Yolanda D.*, 88 NY2d 790, 796 [1996]).

Next addressing the findings concerning Carissa and Rebecca, we agree that the finding of sexual abuse regarding Brittany is not, without more, sufficient to establish derivative neglect of these children (*see Matter of Sabrina M.*, 6 AD3d 759, 761 [2004]). However, where, as here, the abuse evinces a " 'flawed understanding of parental duty to protect children from harm so as to create a substantial risk of harm for any child in his or her care' " (*Matter of Brent HH., supra* at 1018, quoting *Matter of Melissa L., supra* at 857), a derivative finding is proper. Reviewing the proffered evidence, we conclude that the findings of derivative neglect were amply supported.[2]

Respondent's further contention that he was denied the effec-

---

2. We need not address respondent's contention that Syp's testimony improperly bolstered the testimony of petitioner's other witnesses because the issue was not properly preserved; respondent merely challenged Syp's conclusion as to who had committed the sexual abuse. Were we to address the issue, we would have found no error (*see Matter of Zachary Y., supra* at 814; *Matter of Randy A.*, 248 AD2d 838, 839 [1998]).

tive assistance of counsel is similarly without merit. The record demonstrates that active and meaningful cross-examination of petitioner's witnesses was conducted and that counsel vigorously challenged the evidence identifying him as the perpetrator of the abuse (*see Matter of Thompson v Gibeault*, 305 AD2d 873, 875 [2003]; *Matter of Williams v MacDougall*, 226 AD2d 782, 783 [1996]).

With the contention that Family Court denied respondent visitation with Rebecca contradicted by the terms of the order of protection, we affirm all orders.

Mercure, J.P., Spain, Carpinello and Rose, JJ., concur. Ordered that the orders are affirmed, without costs.